UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TREVOR GIST					CIVIL ACTION NO. 07-cv-0740

VERSUS						JUDGE WALTER

BILLY McCONNELL				MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Trevor Gist ("Plaintiff") filed this pro se civil rights complaint against officials at the Claiborne Parish Detention Center ("CPDC"). Plaintiff alleges that he did not receive timely and adequate medical care for back pain that he experienced after he fell out of his lower bunk. Plaintiff filed a Motion for Summary Judgment (Doc. 39). The Claiborne Parish Police Jury filed its own Motion for Summary Judgment (Doc. 42), and the remaining defendants joined in a separate Motion for Summary Judgment (Doc. 51). It is recommended, for the reasons that follow, that Plaintiff's motion be denied and that both defense motions be granted.

**Summary Judgment Standard**

Summary judgment is proper when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. All facts and inferences must be construed in the light most favorable to the non-movant. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). But where the non-moving party

fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist. McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 288 (5th Cir. 2008).

**Summary Judgment Record**

Plaintiff, at the time of his alleged injury, was housed as a pretrial detainee at the CPDC. The CPDC is operated by LaSalle Management Company, LLC. Plaintiff named as defendants William McConnell (managing member of LaSalle), Assistant Warden John Goodwin, LPN Rachael Robinson, LPN Katie Ford, and the Claiborne Parish Police Jury. McConnell, Goodwin, Ford, and Robinson each offer an affidavit with sworn testimony about the relevant events. Their motion is also supported by certified copies of CPDC medical records that are attached to their affidavits, as well as medical records from E. A. Conway Medical Center that the hospital provided in response to a subpoena for a certified copy of Plaintiff's medical records. The affidavit testimony and medical records are competent summary judgment evidence that the court may consider in assessing the motions. Affidavits are specifically admissible under Fed. R. Civ. Proc. 56, and medical records are frequently considered on summary judgment in assessing prisoner complaints regarding medical care. See, e.g., Gobert v. Caldwell, 463 F.3d 339, 347 n. 23 (5th Cir. 2006) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

Plaintiff's motion is also accompanied by medical records, but those records relate primarily to care afforded by the state Department of Corrections after Plaintiff was transferred from the CPDC. The records will nonetheless be considered to the extent they are relevant. Plaintiff submits his own unsworn answers to defense interrogatories, but there is little of relevance in his answers, which relate primarily to a list of prior physicians, list of witnesses, employment history, and the like.

Plaintiff submits written statements from fellow inmates Phillip D. Harvey and Dustin Phillips, but neither statement is in the form of an affidavit or a declaration in compliance with 28 U.S.C. § 1746. Such unsworn statements are not competent summary judgment evidence. Watts v. Kroger Co., 170 F.3d 505, 508 (5th Cir. 1999). The statements, even if considered, would not change the recommended result. The two inmates write that they saw or heard Plaintiff fall out of his bunk, and they state that Plaintiff complained of tingling in his left leg. (Harvey says Plaintiff complained later that day; Phillips says the complaint came the next day). Both men recount that Plaintiff was not taken to the hospital until the following Monday. None of those facts are contested. Finally, Plaintiff offers several assertions in his unsworn memoranda, but such filings are not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991). Only evidence – not argument, not facts in the complaint – will satisfy Plaintiff's summary judgment burden. Solo Serve Corp. v. Westowne Associates, 929 F.2d 160, 164 (5th Cir. 1991).

The facts set forth below are a summary of those represented by the competent summary judgment evidence found in the record. Plaintiff has been in and out of jail on a number of occasions, and he has received frequent medical care for a variety of ailments during his jail stays. Records from CPDC show that Nurse Robinson sent Plaintiff to the LSUMC emergency room in April 2004 when he complained of pain to his right side, treated him for a razor wire cut to his arm in May 2004, often provided Albuterol (a bronchodialator), referred Plaintiff to a hospital for X-rays after he complained of wrist pain in December 2004, examined and prescribed OTC medication for knee pain in April 2005, and referred Plaintiff to a state prison for a dental evaluation in September 2005.

Plaintiff entered CPDC to begin a stay in April 2006. Plaintiff has been inconsistent as to the date he alleges he fell from the bunk, but he most often alleges that he fell on June 16, 2006 at about 2:30 a.m. He also alleges that his medical call request that day was not honored. Defendants' testimony and records show, however, that Nurse Robinson examined and treated Plaintiff on June 16, 2006 for complaints that Plaintiff fell off his bed and injured his back. Dr. Phillip Isherwold examined Plaintiff on that same day, Friday, June 16. Dr. Isherwold's notes show that Plaintiff complained of pain in his lower back with radiation down his leg. Nurse Robinson testified that Dr. Isherwold did not determine that Plaintiff was in need of immediate emergency treatment at a hospital, but he did refer Plaintiff to the E. A. Conway Hospital in nearby Monroe, and he ordered that Plaintiff be given 600 milligrams of Motrin every six hours as needed for pain. Plaintiff was delivered

to E. A. Conway Hospital on Monday, June 19. The report from that visit shows that an X-ray was taken. The radiology report states:

> LUMBAR SPINE/THREE VIEWS: Alignment is anatomic. Mild degenerative narrowing of the lumbosacral interspace. No fractures or destructive lesions identified. Minimal sclerotic changes about the left sacroiliac joint.

Ibuprofen and Flexeril were prescribed, and Plaintiff was given two injections.

Nurse Robinson testifies that the treatment of Plaintiff was consistent with ordinary prison procedure. She explains that in non-emergency situations an inmate submits a written request for care that is brought to the medical offices for review. If a physical examination is needed, the inmate is typically brought to the medical office the next day for an examination by the nurse. The nurse will review standing orders by the facility doctor to determine whether the matter may be treated through the standing orders. If not, the nurse will contact the facility doctor, who (at the time) visited CPDC on Friday of each week. The physician will then provide treatment or make a referral. If the nurse or physician determines that emergency care is needed, an inmate is taken to the hospital.

Plaintiff alleges in his complaint that the E. A. Conway physician told him to schedule an MRI after four to six months if his problems continued. Plaintiff complains that Nurse Ford, when Plaintiff asked to schedule an MRI, told Plaintiff that there was nothing wrong with him and that he should get out of her office. Plaintiff alleges that he then spoke to Assistant Warden Goodwin, but Goodwin refused to intervene and return Plaintiff to the hospital for an MRI.

Nurse Ford testifies that she examined Plaintiff a number of times during her employment at CPDC. For example, she arranged dental care, ensured proper antibiotic treatment, and provided Albuterol. Ford testified that she "never received any information from any health care provider, doctor, or nurse that [Plaintiff] was ever in need of an MRI." She adds that she never had a professional medical opinion that any complaint by Plaintiff required emergency care and immediate transportation to a hospital.

Assistant Warden Goodwin testifies that he is familiar with Plaintiff from his various stays at CPDC, and that Plaintiff was housed during the relevant occasion as a pretrial detainee on charges of probation violation, forgery, and issuing worthless checks. Plaintiff was eventually sentenced for felony violations and later escaped (only to be captured and transferred to another facility), but Plaintiff was a pretrial detainee during the relevant times. Goodwin does not testify about any specific interaction with Plaintiff about his medical issues, but he does testify generally that medical care and evaluation of inmates is done by the medical staff, including the nurse and facility doctor. Any request for a hospital visit is referred to the nurse and doctor for their evaluation and professional opinion.

Medical records indicate that Plaintiff did receive an MRI, about a year later, on July 5, 2007. It indicated lumbar spondylosis most pronounced at L5/S1 that demonstrated a broad-based disk bulge with suspected impingement upon the descending left S1 nerve root. Plaintiff later received an electromyographic/nerve-conduction test, and the results were consistent with a chronic left L5 radicular process. Surgery was recommended in 2008.

**Analysis of Medical Care Claim**

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

The summary judgment record reflects that Plaintiff complained that he fell and suffered back pain on or about June 16, 2006. Plaintiff was examined by a nurse and a physician that same day, a Friday, and on Monday he was transported to a nearby hospital where he was examined with X-rays and received medication. There is nothing in these facts that present a genuine issue as to whether Nurse Robinson was deliberately indifferent to Plaintiff's serious medical need. Robinson followed standard procedure and rendered relatively quick care for Plaintiff's complaints of back pain. Plaintiff complains about the delay between his examination and his transportation to E. A. Conway, but the competent evidence shows that the decision to refer Plaintiff to the hospital was in the hands of Dr. Isherwold (who is not a defendant), so Nurse Robinson may not be faulted in that regard.

Plaintiff did not receive care quite so quickly as he wished, but there is no evidence from which a rational juror could conclude that Nurse Robinson engaged in deliberate indifference of constitutional magnitude.

The same is true with respect to Nurse Ford. Plaintiff alleges that he made oral representation that a physician told him to schedule an MRI. Nurse Ford does not deny that she rejected this request, but she testifies that she never received information from any health care provider that Plaintiff needed an MRI. Perhaps an MRI was appropriate, or perhaps it was not needed at that time, but in either event, Nurse Ford did not engage in deliberate indifference to a serious medical need by refusing Plaintiff's unsupported request for an expensive medical test. Plaintiff does not allege that he suffered greater pain or other health problem for lack of an MRI at that time; he simply wanted the test. Nurse Ford was not deliberately indifferent to a serious medical need simply because she did not immediately honor Plaintiff's unsubstantiated demand for an MRI.

The same is true with respect to Assistant Warden McConnell. He was entitled to rely on the opinions of the CPDC's nurse and physician with regard to medical matters such as whether an MRI was in order. His refusal to overrule the medical staff and order an MRI, in the absence of any record that a health care provider thought an MRI was needed, did not run afoul of the deliberate indifference standard. See Garza v. Chaney, 2007 WL 4367882, *6 (S.D. Tex. 2007) ("it was reasonable for Assistant Warden Mundy to rely on the medical department to handle the medical needs of the inmates"); Jones v. Livingston, 2005 WL

3618316, *3 (S.D. Tex. 2005) ("it would be reasonable for Warden Morales to refer the matter to, and rely on, the medical decisions of Dr. Herrera").

**Claiborne Parish Police Jury**

If the underlying claims are dismissed, as recommended above, the claim against the Claiborne Parish Police Jury will be moot. In any event, the police jury submits an affidavit from Dwayne Woodard, its Secretary/Treasurer, who testifies that the jury did not, during the relevant times, own the CPDC building, employ any of the personnel at the CPDC, or operate CPDC. Plaintiff, when he received that motion, responded that he had made his claims against the jury based on "rumors" that the jury financed the CPDC, and he asked that the court allow him to dismiss the police jury without prejudice. The police jury, however, asked for dismissal with prejudice, and the summary judgment record shows that it is entitled to that greater relief.

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 39) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendants' Motions for Summary Judgment (Docs. 42 and 51) be **granted** and that all claims against all defendants be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of July, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE